Will your argument first this morning in Case No. 14-916, Kingdomware Technologies v. United States? Mr. Saunders. Mr. Chief Justice, and may it please the Court, by its plain terms, the 2006 Veterans Act requires the VA to consider veterans first under the Rule of Two before awarding contracts to other suppliers. That mandate, which applies only to the VA and reflects the agency's unique obligation to veterans, contains no exception for the contracts formed when the VA makes awards under the Federal Supply Schedule. And the government's attempt to create such an exception fares no better than its prior attempts to resist the mandate. Its semantic distinction between contracts and orders conflicts with its own concession that an FSS order is a contract in the ordinary sense. Alito, before you get too deeply into the merits of the case, could you just tell us what relief you could get at this point that's consistent with the Tucker Act? We're seeking a declaratory judgment that with respect to these particular procurements, the VA erred in failing to conduct market research to apply the Rule of Two before going straight to the FSS. Ginsburg, on the ground that this is capable of repetition, yet erasable review, is that your answer to the mootness? Absolutely. It's recurred. The same situation has recurred numerous times, even during the course of this litigation. Kingdomware continues to be actively competing for these contracts, and these contracts are of a short duration. What was the amount of this contract? This contract was for a base amount of $33,000. Now, isn't it strange to get a declaratory judgment that something unlawful occurred in the past, but that no other relief is available for this past violation of the law? No other relief is available solely because of the passage of time it has taken for this case to work its way up to this Court. And that's why the doctrine of capable of repetition, yet evading review, is recognized. What I'm getting at is what good would such a declaratory judgment do? Well, once the legal rights, once the meaning of 8127d is established in this case by that declaratory judgment, then going forward we would expect that the VA will comply with this Court's interpretation of the law. And so it would be a tremendous benefit to the veterans' community going forward from that declaration, from that elucidation of the legal rights here. Sotomayor, you did your client stipulated away the cost that it would have been entitled to after winning before the GAO, correct? There was relief. You just gave it away, essentially. Well, the Tucker Act doesn't allow for the protest costs. And so the relevant cost that might have been allowed would be bid preparation costs, but the very point of this case is there wasn't an opportunity to bid. This isn't a situation in which the opportunity was put out there and Kingdomware was able to compete for it. It was — it skipped through the rule of two process required by 8127, went straight to the Federal supply schedule, and the first that Kingdomware ever learned of it was when the announcement went up saying that the contract had been awarded on a sole source basis to someone else under the Federal supply schedule. So under the circumstances of this case, where it's about the government going to a procedure it shouldn't be going to first, there's no opportunity to amass those bid protest costs. Your client is still an FSS vendor and is still competing for contracts at the FSS? Yes. I mean, my client is listed in the FSS, but most importantly for this case is a service-disabled veteran-owned small business and continues to be listed in the VA's database, which limits the eligibility for the rule of two here. The government takes the position that if we rule in your favor, that means that we're doing away with effectively the FSS. Is that your view? No, absolutely not. The FSS is still going to apply to a large number of procurements. Congress, when it made this targeted provision mandatory and focused on the VA, also said in 8127e that it only applies to the businesses that are registered in the VA's database. And it did that for two reasons. Number one, as opposed to the self-certification procedures of the Small Business Act, which are more open to abuse, it wanted to prescreen and make sure these are the real deal here in the database. And that also ensures that the VA has this information at its fingertips. Currently, there are about 7,000 people listed in that database. There are going to be tons of procurements for which the VA will simply consult its own database and see that there's no veteran-owned small business that's eligible to do this. Sotomayor, can it tell from that database whether or not a particular vendor is a veteran or a disabled veteran? Oh, absolutely. The database, and this is the point, this is very brief, the VA has its own VA-specific database mandated by law that is limited to veteran-owned and service-disabled veteran-owned small businesses. And the only people who are eligible under 8127e for this preference are people who are contained in that database. Well, there's two databases. There's the general database and there's the FSS database. Are we talking about the same one? No, we're talking about a separate VA-specific database. And so what's happening is the VA is gathering in this information. It knows who the veteran-owned small businesses are. And then, rather than consulting its own database to see who they are, it's been going straight to the FSS, which I don't know. Sotomayor, and then you are wanting to do away with the FSS. No, not at all, because they go through the FSS and find the veteran-owned small businesses? Not under this mandate, because the mandate here in the law is tied to the VA's database, and people who are listed as a veteran-owned small business under the FSS database don't go through those same. Ginsburg. Mr. Saunders, I think that Justice Sotomayor's question is asking you to address what happens if there's an urgent need. I think you would concede, is it a slower process if you have to use the rule of two? And suppose there is an urgent need for a certain good or service. Well, two things. Number one, the rule of two only applies when you have both fair and reasonable price and best value to the United States. So if there's truly an urgent need and it's not going to be met by going through the rule of two, then I think you have leeway within the best value determination. Well, but that strikes me as a very thin protection. These terms imply a lot of discretion, what's fair, what's reasonable, what's best value. The idea that that's going to operate as a significant restraint on the requirement that the VA locate veteran businesses seems a real stretch to me. But the process here, I mean, I'm going to take you through the process of applying the rule of two. It's limited to the universe of the people in the database. So all the VA has to do is fire up its own database and see who's out there. For the heartland of the VA. Kagan, how is it apparent that a particular veteran's business can perform a particular contract? I mean, what in the database shows you, yes, this veteran's small business is capable of performing this contract in a reasonably effective way? Because the database has the North American Industry Classification System codes, which are actually the same codes that correspond to what's in the FSS. And to the extent there is additional information that's needed, it's very easy to contact the veterans in that database. Counsel, could you get back to your answer to my question? Oh, and so there's, for the heartland of small business contracting, the FSS has a system where we are going to fall into the simplified acquisition procedures under Part 13 of the Federal Acquisition Regulation. That's for services under $150,000, and for procurement of goods, it's now up to $7 million. And under that system, you have a greatly streamlined process for the smallest contracts, micro-purchases, it's really just you make the decision. For the sort of lower tier of contracts, certainly for anything under $25,000, all the person, all the government is doing is placing a purchase order under the simplified acquisition procedures. There's a standard form. It's form 1449. It's a single sheet of paper, and that's the purchase order that they place. And quite frankly, the form looks almost identical to FSS form 347 for how you place the order. So for the lower level stuff, there is already a procedure outside the FSS that's incredibly streamlined. And as you begin to get to larger dollar-valued contracts, the requirements of going within the FSS begin to ramp up in terms of having to seek price reductions. And also, if you think of how the FSS operates in terms of services, you might be listed on there for the GSA as someone who can provide information technology, customized computer programming. But to go to Justice Kagan's question about how do you know can you actually do this work, that same process plays out under the FSS. For the services, yes, someone's listed as a custom computer programmer, but the agency still has to issue a statement of work, saying this is what we actually need done. Here are our requirements. It puts that out there with a request for quotations that come in from the various FSS suppliers. Now, they will be constrained by, you know, the prices that they listed before on the FSS, but it still is an interactive process. It's not just firing up the computer and clicking. And I suppose there's some system for the government to check to see whether or not this person really has been offering this goods, has a track record, because that goes with a fair and reasonable price. Yes, absolutely. And they can compare, you know, a broad – when they're doing their market research, they have a lot of flexibility to compare here. The other thing I will say is that there's a broad grant of discretion to the VA in terms of what it requires in the database. So if it finds that it needs more information to make this law work up front from the vendors, then it can require that. It can take the effort that it's spent resisting the mandate and put it into making the mandate work within its existing. Ginsburg, you mentioned best value to the United States as one of the qualifications. I understand fair and reasonable price, but what is offer best value to the United States, what does that add to the fair and reasonable price? Best value is designed to go beyond price. It's really sort of the totality of the circumstances. It lets the government consider quality, its needs. In this case, it would allow it to consider the urgency of a particular procurement. Well, the sort of thing that there will be an awful lot of litigation about, don't you think? Against a framework that has been recognized the discretion. There's litigation within an APA framework in terms of arbitrary and capricious review. Well, you're putting a lot more weight on that – excuse me – on that provision if you prevail on your statutory interpretation argument. And it seems to me that that provision is inevitably going to lead to litigation. How do you tell what's best? It's a combination of price and quality. It's not any absolute that you can identify. You know, what's fair, what's reasonable? I think the businesses that you represent would be litigating those terms. It's hard to see almost in every case. Given the standards for making that out, I don't think that you would see rampant litigation in this area in terms of the squishiness of the term cuts in favor of the government in that sense there. How do we know how to evaluate your answer or the government's position if the government comes and says, oh, this is just unworkable, it's going to be difficult? If we've never been involved in government contracting, are there findings? Are there writings in law reviews? What do we look to determine the empirical basis for your argument or the lack of empirical basis for your argument? I think it's looking to the— Just on what we think is going to happen. Well, no, it's looking to the authorities that exist on the face of the statute in terms of look at the simplified acquisition procedures and how streamlined they can be, look at the FSS procedures and how complicated they can be as the dollar values ramp up. But there is no empirical evidence, because this is a new kind of provision, this mandatory set-aside. Isn't that true? So we don't have any logic, we don't have any experience at all. We don't have direct experience with the mandatory provision like this because it's been resisted for a decade and hasn't gone into— Has the SBA been using it? Well, under the Small Business Act, there were agencies that were doing set-asides, and then it was made explicit that they could do set-asides within the FSS. We also have been dealing with situations for many years where you have other preferences outside of the Small Business Act framework in terms of federal prison industries, the AbilityOne program for the blind and the severely disabled, that have always taken precedence over the FSS. And it's not proved to be unworkable to give those mandates mandatory effect without going to the FSS. And we've also cited, you see in our reply brief, sources saying, we have a treatise that we've cited that's discussed the fact that the simplified acquisition procedures for these low-value contracts are just as simple, if not in many ways, simple as the FSS. Sotomayor, you're not talking about just the small-value contracts. You want the supply to all contracts, to all orders. So to tell me that it works for the small ones is not answering the questions of my colleagues. How much is it going to complicate the big ones? Well, for the big ones, the FSS itself is already complicated. It's already ramping up in complexity as the contracts get bigger. And quite frankly, when we get to those bigger dollar figures, the idea that if a small business is going to qualify for a contract that's above $150,000, that we can't go through the procedures that Congress mandated here. The VA can't even consult its own database and see whether there's an eligible supplier before going straight to the FSS, I don't think holds water in that sense. And at the end of the day here, we're looking at a mandate that was plain on its face in terms of Congress saying, shall award contracts, contract being an expansive, all-inclusive term here, and these policy judgments are judgments that Congress made in terms of the administrative feasibility of this when it decided to move away from the failed Small Business Act approach and go to the mandatory approach here. Breyer. Breyer. That's why I wondered, I'm not certain how this works, but I read the statute. It says the Department shall award contracts on the basis of competition restricted to veterans, if, if, if. Okay? Well, what wouldn't be awarded according to veterans? I mean, what was surprising to me is that the goal was to have 3 percent awarded to veterans. But if I read this the way you read it, everything will be awarded to veterans. I mean, maybe not literally, but there are millions of veterans. There are probably hundreds of thousands or millions of veterans' businesses. So wouldn't everything be awarded to veterans? What wouldn't be? No, not, not at all. What wouldn't be? That's what I want you to address. The vast, for the vast, given the limited number of veteran-owned small businesses that are out there. How many are there? When Congress was going through the legislative history here, it was hearing that maybe 15 percent of businesses. So there was a 15 percent of businesses, but the question is what does the Department of Veterans Affairs buy? And my guess is they buy lots of stuff. They buy household stuff. They buy paper towels. They buy buildings. They buy all kinds of things. And in respect to all the things they buy, if you read this, the contract applies to everything. I guess they'll buy it all from veterans. Now, it's just 90 percent. I don't know. It's very surprising to me that Congress would have wanted the Veterans Administration to buy everything from veterans. Now, that's nearly everything. Now, you explain to me I must be missing something, and you explain to me what I'm missing. First, the fair and reasonable price and best value requirements. No, no. I understand that. I said they have certain qualifications, of course. You think that the veterans things aren't? They have reasonable prices. They have they're qualified. They do a fine job. Just say it's surprising that Congress would have wanted nearly everything to be bought from veterans. That's all. And where am I wrong? Right. Wrong in terms of the natural cap on the limit of businesses that are out there, but where there is a veteran-owned small business that can perform the requirement. I'm not saying they can't perform. No, no. I'm saying. I want you to address what you're calling this natural cap. You're saying, to me, you're wrong. It doesn't mean everything. It means like 10 percent. Is that what you're saying? Or what are you saying? Explain what it is. I read it. I thought it's everything. Now, you explain why it isn't everything or nearly everything. I mean, if you're not a veteran, Congress wouldn't normally say you don't get a leg up, but to shut you out entirely. I mean, that's my problem that I want you to explain. It's — it is everything, all of the contracts, for which there is a veteran-owned small business that can supply service. Breyer, are you saying Congress just wanted everything that veterans can supply to be supplied by veterans? And if I say, is that everything, it's not 90, it's not 100 percent, probably not 99 percent, but it might be 80 percent. I mean, I'm guessing. You tell me. You're the expert. What percent is it when you win? When I win, I don't think we're going to be talking about numbers that high. Congress in legislative history was talking about 15 percent of the business. Kennedy, I thought your answer would be 100 percent. I'm just saying as a practical matter, in terms of what Congress is on, what's wrong? Your answer to Justice Breyer, 100 percent, provided the statutory requirements are satisfied. Yes, that is correct. When there is a business. And we know how many businesses there are because they're registered under a special procedure. Right. And so when there is the business that's available, yes, it should be getting all those opportunities. That's exactly what Congress just don't want. Well, but Justice Breyer raised a question about the way this statute is worded, because it says, for purposes of meeting the goals, and the goals are very low, the goals are 3 percent. So it seems odd for a statute to say, for purposes of meeting a 3 percent goal, you should do the following, which will lead to 90 percent. Well, a few points, Justice Kagan. First, the 3 percent goal was the government-wide goal under the Small Business Act. This provision for service-disabled veterans requires the VA to set a higher goal. How high? It doesn't require the specific number. It has to be higher than 3 percent. And we're talking about a time. That could be 4 percent. It could be, but we're talking about a period in time where there have been goals since 1999, discretionary authority since 2003, and as of 2005, the government's progress towards its 3 percent goal was .6, six-tenths of 1 percent. No, it sounds like the government did very badly in meeting its goals, and you can understand why Congress would have done something to say the government, and specifically the VA, has to do a lot better toward meeting its goals. But the goals are still, you know, pretty far down compared to what Justice Breyer was indicating is the natural tendency of this system that you're describing to produce, you know, almost everything is given to a veteran. Where there is a veteran that's eligible. But even at the time that this was done, the goals had always been a 3 percent government-wide goal. Individual agencies were required to set their goals based on the maximum practical opportunity, and so even at the time going into this, the VA had already set a higher goal. I believe it was 7 percent. The goals that it has set under the statute have been even higher than that. And the answer is, yes, the government was expecting the VA, this to be an important mandate for the VA, because this was tied to the VA's unique obligation to help veteran-owned small businesses, rather than setting up. Roberts You mentioned that the you've mentioned several times, I think, that there has to be a veteran-owned business that's eligible. But don't you think there will be a lot more veteran-owned businesses if you prevail? In other words, if everything is open to the preference, as long as there's, you know, two, they get the preference, don't you think a lot more veterans, won't it make a lot more sense for them to go into business rather than some other line of work? It may well be. And Congress would think that's fantastic. This is a issue. Roberts Well, then you shouldn't be telling us that the limitation is that there are only so many veteran-owned businesses. Because if you prevail, there will be many times that. And there could be. And then that, you know, this was enacted at a time in 2006 where we were facing incredible unemployment rate among veterans. And so if this is encouraging formation of more veteran-owned small businesses I can see many good things. People would enlist in the armed forces. They would have careers assured after. It just still surprises me. But my question is not really aimed at you. It's aimed at the other side. And you would have a chance to answer this question. I can understand. I accept your argument, pretty much. I don't know why there would be an exception for the SS, the FSS or whatever it's called. But I was rather stopped by the lower court's argument, which they've given up. Which is that right in the statute, not in a preference, but right in the statute, it says for purposes of meeting the goals under Section A. That I understand. And then what you do is you'd have goals, they should be tough goals, and if you're way ahead of the goals, then maybe you don't have to do it. That was their argument. The government's given that up. So I don't know what to do. I mean, I'm going to ask them for help. And I have the same one. But the government's given that up because the stated purpose of setting those goals was to increase contracting opportunities. And the House report here was referring to tools to meet, if not exceed, its contracting goals. The goals were never intended to be ceilings here. And if in retrospect it seems like there might be some mismatch between the mandate and the goals, you have to remember that at this time they were so far from meeting even the more modest goals that Congress was thinking of this in mandatory terms. We have to do everything we can here to ramp up this obligation because the old approaches, the discretionary approaches, aren't working. And the idea that in doing that, they would, without saying anything to that effect in the statute, leave an enormous loophole that lets the agency take up to 60 percent of its procurements off the top and just send them straight to the FSS doesn't jive, especially when you remember that at the time that the agency was missing its goals, those contracting goals counted not just open market contracts, but FSS orders were being counted. When the government was doing .6 against the 3 percent goal, that was both on the open market and on the FSS. Congress was worried about that failure across the board and enacted a mandatory provision. Roberts. Thank you, counsel. Mr. Tripp. Mr. Chief Justice, and may it please the Court. The mandate here applies when the VA awards wholly new contracts, not when it places orders under old ones. If I could just say one thing. Ginsburg. Mr. Tripp, would you preliminarily explain why the government walked away from what was a winning position in the Federal Circuit? I mean, it's really odd. I read the Federal Circuit decision and I expect to open the government brief and say, yes, the Federal Circuit was right, but you're telling us the Federal Circuit was wrong. I guess about the Federal Circuit's position, we think the Federal Circuit's rationale is right so far as it goes, but that it's incomplete. And so the Federal Circuit has a complete answer for why Petitioner's sort of maximalist position is wrong, which is that if this mandate applies in 100 percent of procurements, then the Secretary's discretion to set goals is pretty much wiped out and it's hard to even talk about them as goals at all. But the fact that there needs to be discretion somewhere in the scheme doesn't really answer where the discretion needs to exist. And the distinction that we're drawing, first, I want to be clear about the distinction that we're drawing. We're not saying that when you place an order under a preexisting contract that that's not a kind of contract. Of course it is. We say that outright in our brief. What we're saying is that when Congress establishes a procedure that applies when an agency, quote, awards contracts, that's naturally read to refer to awarding totally new contracts, not placing orders under old ones. Alito, your answer to Justice Ginsburg is that the Federal Circuit was actually right, even though you disagree with its reasoning. I mean, isn't the real answer to the real answer to this question that the VA regulations don't say anything about goals? It's not only that the VA regulations don't say anything about goals. It's that the VA's regulations map up perfectly with the argument that we're pressing here, which is that this is a mandate that we apply in 100 percent of procurements when we are awarding a wholly new contract. We do it every single time under the regulations. But those regulations never even come up. You never — like, a contracting officer doesn't begin a procurement by turning to Part 819.70 of the FAR, which is like a 5,000-page document, right? They can open up, march their way through, place an FSS order under Part 8, and when you place an order under a preexisting contract, the FAR is crystal clear that you do not consider set-aside requirements. So the argument we're advancing here is foursquare with the way our regulations actually work and what our practices have been on the ground since 2009. Sotomayor, so why is it that you call these order contracts? And I look at your history, and you yourself, the government itself, calls these order contracts. Goldstein, an order is a kind of contract, you know, under the sort of like the  Sotomayor, it's not a kind, it is a contract. Yeah, yeah, it's a contract under the Federal Reserve Act. Sotomayor, so tell me, what kind of contract do you have absent the order with the FSS vendor? Oh, under the FSS, there's already a government contract between the United States and the vendor to supply an indefinite quantity of a certain category of products or services. And so we're placing an order under those preexisting contracts. How difficult is it for you to take the database that you have with respect to what are veteran-owned businesses, take that database, look at it, look at what it is you need, a stapler, and see if how many vendors on that list supply staplers, and then check that against the FSS. If there's no veteran that matches the FSS list, then you go to the FSS. What's the problem with that? Yeah, if I could take a step back and explain why this is so important to the VA. The thing that we're most troubled by is that Petitioner's position would block us from being able to place orders under preexisting contracts. The whole point of contracts. No, you didn't listen to me. You go to your veteran-owned list. You're looking for staplers. You find five veteran-owned businesses on your list that sell staplers. But you want to – you need an FSS supplier because you don't want to negotiate a new contract. You don't want to do all that hard work. You check whether there are two or more of those five on the FSS list. Okay. So you're saying if we were going to use the rule of two to choose among FSS vendors who are already qualified. Exactly. The first point about that is that Petitioner would lose. They are not qualified vendors. I don't care about the merits of whether it wins or loses. I'm talking about the legal issue. What is so difficult about that? Yeah, a couple points about that. That would significantly narrow our practical concerns. Our practical concerns are mostly driven by the interpretation that we would not be able to place orders under preexisting contracts at all. We do this 85,000 times a year. I don't – I don't. This is very important to us. And so our first position about that is we just don't think Congress did that. This statute is materially identical in its wording to five earlier statutes, none of which have ever been interpreted that way. When Congress wanted to address the issue – Except the SBA has interpreted this contrary to you. So has the GAO. The SBA took that position, and the FARC counsel, which represents the entire procurement policy of a broad pan-executive branch procurement agency, rejected it, said that it was going to be unworkable and that it was unclear whether it would offer a significant upside. Kagan. Kagan. Kagan. I mean, I understand your policy concerns and the way you think that this will damage procurement practices, but the statute just seems pretty clear once you say that this is a contract, which you've said in your brief and right now. And once you say that, it just – the statute says a contracting officer of the department shall award contracts on the basis of competition restricted to veterans' small businesses. So that seems to kind of answer the case, whatever the policy ramifications are. Well, I think the basic problem with that is if you take that sort of just like sort of 1L understanding of contract and blow it through. Well, it's your own understanding of contract. You just said this is a contract. But the problem is that there's many Federal procurement statutes that apply when the Federal Government, quote, awards contracts. That's what five prior small business contracting preference statutes say. They apply when there are either awards contracts, award contract opportunities or reserves contracts. And the two most basic statutes in the area. But as I understand it, all of those contracts have a may in there. No, two of them. Or almost all of them do. Well, one of them has always had a shall. One has shall for 13 years. But if I get to one other. But most of them have a may. But here you have, and the shalls, the one or two that there are, have really never been adjudicated by, certainly by this Court. Right. So the question is, well, there we are. We are, you know, for the first time deciding what this language means. And this language means that you shall award contracts on the basis of this restricted competition. And you say this is a contract. So, you know, end of case. Well, so a couple of points. The very basic statutes that govern sealed bidding and negotiated bidding, the most heavyweight procedures for awarding a new contract, they both say that the government shall award a contract under those procedures. And if you extend those to the FSS, that would totally break the whole point of entering into these kinds of contracts up front, is that you don't have to do that again and again. And when a local VA hospital needs to order, like, stents or wheelchairs or an ultrasound machine. Sotomayor, but I don't understand your policy argument. Why is it so tough for you to get those things from an FSS vendor if it's a veteran? I mean, we often do, right? We are currently exceeding our goals on, if you look only at our FSS spending at OVO. Kennedy, I think the question is, it's a matter of just pushing a second button on the computer. First of all, I want to see what's the FSS, and then I want to see if there are any veterans-owned businesses that provide that service or that product on the FSS. Push two buttons. That's it. I think that the practical sort of front end of how difficult, if we are talking about using the rule of two to choose among qualified FSS vendors, how difficult is it to do that, the upfront cost is not that big. The bigger concern, practical concern that we would have is the litigation risk that that would expose. Right now, our choice of whether to do a set-aside when choosing among FSS vendors, that is committed to agency discretion by law, because when Congress addressed this point head on in 644R, it said that agencies may, at their discretion, do this. But if suddenly the rule of two applies in every case, then in every case a disappointed bidder can come in and say, oh, no, you misapplied the rule of two, you should have thought that they were inconvenienced. Roberts. Roberts. We are dealing with small business, veteran-owned small businesses. The examples you gave, stents, wheelchairs, ultrasound machines, are there many small businesses that provide ultrasound machines? I guess I don't know about ultrasound machines, but we buy things like that.  Roberts. Now, are those expensive, big things that you expect you have to be a big company to provide, like an ultrasound machine, or you mentioned stents. Now, maybe if they are commodities, then to provide fair price and best value, it also would help to be a big business as opposed to a small business. I can't imagine a small business is going to make a stent that is going to be at the same price and same quality as some arms company. No, but we do a lot. I mean, we do 13 percent of our FSS dollars go to small businesses, and a lot of it are for things like professional staffing, right? So we hire temporary nurses and psychiatrists, cardiologists, things like that. Through. Roberts. 13 percent of your acquisitions? Of our FSS, when we are spending on the FSS, 13 percent. So I should discount your parade of horribles argument by 87 percent. It's really not as horrible as it sounds. Our concern isn't placing order. We are happy. We are happy. One of our, we are trying, like this statute has had enormous effect on our procurement. We are happy to help veteran-owned small businesses, but it's only one of our priorities. Right? Our number one agency priority is caring for veterans. And so our concern is that if you, if you apply this with this wooden mandate across the board in every case, that it would seriously impair our ability to deliver the quality care that we are trying to deliver. Is this the case? Do I understand this? Am I, there are three parts to this. Question one, in my mind. Is it the case that they lose because the agency does not have to apply veterans only where they have way exceeded their goal? The answer to that in the opinion would say we do not reach that question, for there are no regulations that suggest that the agency has tried to take that approach. Am I right so far? That it's tried to take the approach of saying that we drop it if we are way over the top? Correct. Yeah. Right? All right. Then we reach question two, left one open. Question two is, do they have to choose the rule of two in the FSS? And there are two parts to that. The first part is suppose two veterans qualified are already on the FSS list. And there we might say, yes, you do, in respect to them. Or we might say, no, you don't, but if we say, yes, you do, at least we don't, in your opinion, wreck the system. Then we get to step three. There is no veteran on the FSS. Now what do we do? And there your argument is that, look, everyone on the FSS is a person who has entered into a contract which contract says that when called upon for further supply, they will give it. Am I right? Yes. So therefore, it is that contract, not the contract within the contract, that they are talking about. And were we to say the contrary, we would have to take an architect who has 40,000 pages of things he's going to do, and we change the sentence on page 389 to read 300 rather than 400, and we say that's a new contract. Or something like that. I'm trying to make an argument for you. It's not a contract within a contract. It is contract to which this refers. Am I way off base, or is that what you're trying to say? And don't just say it is because you think I'd agree with you, please. I don't think that's exactly what we're trying to say, and it's a little hard to know. Breyer, all right, well, if it isn't that, look, these people on the FSS list have already entered into a contract. This is just implementing the contract that they've already entered into. If you're not saying that, then how in heaven's name do you get out of his argument? We're saying that when we place an order under a preexisting contract, that that is not awarding a new co ---- awarding a contract within the meaning of these procurement statutes. There have been ---- I really do want to emphasize the historical context that's been used for decades about the understanding of this phrase throughout Federal procurement law, right? There's five prior statutes on exactly this same subject, and every one of them has been interpreted by the FAR to be categorically inapplicable when placing orders under preexisting contracts. And one of the things that's very troubling about their position is that if you say, well, we want to read a lot into this special provision, 8127d, it was intended to help veterans, but there's nothing special about the language. It's almost identical to the language of the HUBZone preference that was in place from 1997 to 2000 that had ---- that had ---- sorry, 1997 to 2010, that had exactly the same shall award a contract opportunity. I mean, very powerful. And that the whole time, since 1978, Congress has had a provision in place saying that each contract in a small-dollar range shall be reserved exclusively    And so there's an overarching problem. The argument, which you state very well, is very complex. The Federal Circuit had a really simple take on it, and all these regulations and provisions that you're mentioning didn't figure at all in the Federal Circuit's opinion. And so you're putting us in the position of being a court of first view in a rather dense area. This Court usually doesn't do that. It likes to know what other judges have thought about. Yeah. And I totally understand that concern. And, you know, obviously, our first-line position is that we're right for the reason that we say in our brief this traces through all of the Federal procurement statutes. It wouldn't upset the way things work in this area of the law, and we think we're also entitled to Chevron deference, and for that reason, we think you could affirm. But we also said in our mootness briefing that we think it would be fair to send this back to the lower courts to consider these arguments in the first instance. We recognize that. Consider the argument or consider mootness? Consider both. But it's And the goals are committed to his discretion, except for that the goal, the minimum goal, needs to be at least 3 percent. The goals, since the statute has gone into effect, have been in the range of 10 percent and 12 percent. And I want to emphasize the night and day interest. And I don't think it's a matter of the statute deciding whether to go 5, 10, 15, the risk of litigation, the higher the goal is. No, I think, I guess I would have to speculate on that, but I think it's more the sort of practical reality of what seems like a goal, something that we could push for that's attainable but not unrealistic. Well, if the discretion is that broad, then it seems to me that maybe the Federal Circuit was wrong, that these goals are simply aspirational, but that doesn't have any real effect on the operation of the statute. Well, they have a huge impact on the way that we actually procure, right? This has had, I mean, the statute, before the statute was enacted, we were falling short of even the 3 percent goal. Now the goals are in the range of 10 to 12 percent, and in most years we're crushing these goals, right? We're beating them even on the FSS, where we're not applying the rule of 2, but we're doing two other very important things for veterans. We put a thumb on the scale when we're considering offers that were submitted within the FSS by veterans, and we also do set-asides under 644R, the statute where Congress spoke very directly to this and said that we may, at our discretion, set aside orders placed against multiple award schedule contracts. We do those set-asides, and the results have been very dramatic. Roberts. Roberts. I'm sorry. When you say you're crushing the goals, that means you're meeting them? Sorry. We're far exceeding them. In many years, we're nearly doubling them. And I think this is something that we have — this has had a huge impact on our operations. I think it's had a big impact on the veterans' community, but our concern is that if you take this sort of mechanical rule of 2 and apply it, especially in the sort of the blocking interpretation that Petitioner has been pressing, that we would not be able to place an order at all. Could you explain why the FSS — use of the FSS was important with respect to this particular contract? You provide examples of the VA's ordering standard commodities like a stent or pencils or something like that, but this was, in my understanding, maybe this is not right, this was a custom service that you were seeking, and what you did was to solicit a quote from a single contractor. So how does that fit in with the arguments you're making about the need to use the FSS? It's sort of two things about this. This is a somewhat unusual bid, but there's not explanation in the record because this case was just litigated on the agreed facts about the procedure. The much more common — the VA orders a lot of services on the FSS. It's like one of the major ways that people — that agencies purchase services. And the standard way of doing it, it's not like Amazon.com, but you can go onto a website, drill down, see all the vendors who are already prequalified to provide that kind of service. And the standard way that you would do this is that you would request quotes from at least three of them, and then consider them when they come in. And when you request the quote from them, even if you request it from three or four of them, every vendor on the schedule who's preapproved will see that it's open and can submit an offer, and then the agency would consider all the offers that were given to it, and it picks the one that offers the best value. So that's how it would work if we were doing something like hiring a temporary psychiatrist at a new — at a new — expanding a medical center in Des Moines or something. One of the amicus briefs suggests that the VA is now doing increasingly complex procurements by way of the FSS, that we have it in our heads that this is all about, you know, staples and paperclips, but that, in fact, the FSS is being used to do things that would previously have been done on the open market. I — well, first I want to emphasize that the VA's primary use of this, again, is not — I'm not talking about staples and paperclips. We're talking about, you know, the medical-related stuff, you know, wheelchair stents, all that, temporary staffing services. But, yes, a lot of the FSS — even for more complex procurement, the FSS is still substantially easier, and the FSS, you tend to already be sort of aggregating the government's buying power, and so the pricing is — the idea of the FSS is that it's both easier to do and that the price will ordinarily be lower. And so, I mean, the agency wouldn't be going into the FSS if the agency didn't think that that was the best approach, and, in fact, whenever the procurement is over half a million dollars, I believe, the FAR requires the contracting officer to make an affirmative express determination on exactly that point, that going through the FSS is going to provide the best value for us overall. And I — and just to respond to Petitioner's effort to put a lot of weight onto the best value language in the rule of two, I'm a little confused by that, because — exactly because when — whenever the agency is placing an order under the FSS, under the FAR, that the contracting officer is making a determination that that order is the best value. So I guess I just — I feel like that may just collapse on its own weight. I don't quite understand where that argument goes. Kagan. Mr. Tripp, can I ask, what effect would this statute really have on your view? As I understand it, the government does have to use the rule of two on all open market purchases. Is that right? Under the statute, our regulation is implementing it, yes. Above, like, a very low threshold. Is it 3,500, something like that? Right. Right. So — so if you are right, what did this statute actually accomplish? In other words, you already have to use the rule of two for open market purchases or almost all of them. Oh, right. What does the statute do? Yeah. So 8127d has a huge effect, because under just the sort of the regular FAR, you just have to do a set-aside for small businesses, right? That's the sort of norm under the — under the rule of two. But under 8127d, this required to restrict competition only to veteran-owned small businesses who are in our database. So this is a far more — only in our — who are verified as veteran-owned in our database. So this is a far more powerful preference than the ordinary preference in the FAR, or even when you take that and you couple it with section 8128, which they mentioned in the brief, which it gets at, again, just sort of putting a bit of a thumb on the scale. Restricting competition is a very powerful thing, and it has a huge effect. So, again, I think I just want to emphasize at closing that our — our major concern is with Petitioner's sort of blocking interpretation that would prevent us from placing orders at all, even when we have them in place and even when we could place orders with another veteran-owned small business. Sotomayor, and you still haven't answered my question fully. If we limit that to preexisting orders where there's two or more veterans, are the same practical consequences? The practical consequences are much narrower, but I have a lot of trouble seeing how you limit that to this statute, when the language of this statute is materially identical to 5. Like we limit everything else. Once we say what we think, Congress then decides what it's going to do in the future. Right now there are no statutes like that. No, no, no. There's five others on the exact subject of small business contracting preferences, and especially 644J, which applies across the government, and says that each contract But the Small Business Administration has read it the way Kingdom reads it. No, that was decisively rejected by the FAR Council, the government-wide body that considered this. They said it was unworkable and it was unclear that it was going to have a significant upside. Congress responded to the FAR Council by enacting 644R and establishing a procedure to do that, but making it discretionary in all cases. And if you extend the Rule of Two mandate there, first of all, it would expose us to lots of litigation. But again, I don't see how you restrict that to this statute and not all the other ones. Kennedy, do you know what proportion of the VA's annual purchases are under the FSS? By dollar? Yes. 5 percent? I think it's about 20 percent. 20? About 20 percent. What was the 60 percent? There was a 60 percent figure. The 60 percent is by transaction volume. You know, a lot of the FSS orders tend to be relatively small dollar orders, so there's a lot more of them, but they don't add up to as many dollars. What are the kinds of things that aren't done under the FSS? Like, what's the remaining 80? Well, I mean, a big part of that are orders that we do under other contracts. So, right, we spend $4 billion a year ordering pharmaceuticals under a preexisting contract, and, I mean, if we couldn't do that, that would be really, really devastating to our just basic operations. Do you know how many veteran-owned businesses would be able to offer the best value on pharmaceuticals to the VA? No, what I'm — I think, actually, if the question is just, you know, to — if a small business needed to deliver some penicillin to a local hospital for an individual order by a local hospital, I don't know. Maybe a veteran-owned small business could do that. But what we've done is to — is, actually, as Congress directed us in section 8125, they've required us to buy these things on national contracts or on the FSS, and so that's what we've done. And so we strategically source all of our pharmaceutical purchases, or almost all of them, through this one contract where we can get them in a matter of minutes. We can place the order and we can get it delivered the next day. If there's no further questions. Roberts. Roberts Thank you, counsel. Mr. Saunders, 4 minutes. Saunders Thank you. This case should begin and end for this Court with the concession that in the ordinary sense of the term, an order under the FSS is a contract. Congress chose sweeping language here in acting its mandate, and that language encompasses FSS orders. And to the extent there are, you know, changes that would need to be made or other policy considerations, those could be made by Congress in the future. But the policy consideration it made is embodied in the statutory language it chose. Now, the idea that we're going to come back and limit this based on a specialized meaning of the word contract, we should remember that that argument is not one that in this Court, if it's a settled background interpretation that Congress was incorporating that limitation into the Act, you think it would have occurred to them in the last decade. The carve-outs for the Small Business Act exceptions were never justified based on providing a narrower meaning of the word contract, and on their face were expressly limited to the Small Business Act, a provision that applied to Part 19 of the FAR implementing the Small Business Act. Well, to the extent there's an exception for the Small Business Act, what Congress came in here is it rejected the Small Business Act approach. Rather than continuing to tinker within the framework of the Small Business Act where this exception applied, it said we're taking this mandate out of the Small Business Act, we're going to narrow it, it's not going to be a government-wide mandate, but we're going to apply it specifically to the VA in light of its unique obligations, and set the VA up as the driver of procurement in this area. Have it set the example for the rest of the government. Congress was making, was balancing these policy considerations. It wasn't going to be blundering into something that was administratively unworkable. And if you the dire consequences that we're hearing today really stood any chance of coming to pass, I don't think that you would have the American Legion, the Iraq and Afghanistan veterans, 41 members of Congress who care deeply about veterans issues, supporting Kingdomware's position in this case. The reality is if the government's only doing 20 percent of its procurements from FSS, you're already talking about a broad mandate. And then with respect to those existing ones, you have to have a business that is eligible, it has to appear in the database, and it has to be able to offer a fair and reasonable price and best value. And as the Chief Justice discussed, for some of these big order commodity contracts, that it's going to be a difficult fight for the drugs that are being offered here. There's a statutory provision that says that the government acquires its drugs at 76 percent of the average price that wholesalers pay to the manufacturers. So take the average price that anyone else in the world can get from the manufacturer and do a big discount on top of that. Those are tough terms to beat. And so I think that there's going to be, you know, the reality here is not the dire consequences that you're seeing, and the policy judgment is for Congress. And believe me, if anything in this mandate, enforced as written, is going to hurt veterans in any way, then you can expect Congress will act swiftly to correct that problem. But none of this supports the sweeping carve-out that the government is saying, that it doesn't even have to look at its own database. It doesn't have to consider a single veteran-owned small business, no matter how competitive it would be, because it can go straight to the Federal system. Kennedy What response do you have to Justice Ginsburg's question that really you're making us a court of first impression here, shouldn't we send this back? I don't think we should, because the meaning of contract, this is a straight-up question of law, and the reality is that the veterans who are waiting for this law to be enforced as written have already waited a decade to send it back and have additional delay on a pure question of law based on a new argument that the government's making for the first time here sets a very bad precedent. Roberts Thank you, counsel. The case is submitted.